TAYLOR, J. not having heard the argument, gave no opinion.

Judgment affirmed.

---

HASTINGS *vs.* FARMER and ELLIS.

Under the statute (2 *R. L.* 153, § 2) declaring that no person shall sue or maintain an action upon a contract made with any Indian belonging to certain tribes within this state (including the Onondagas) a judgment upon contract rendered against an Onondaga Indian, without appearance on his part, is void.

An Indian may appear and plead his exemption from suit upon his contracts, but he is not obliged to do so. The courts have no authority to render judgment against him.

JOHN HASTINGS brought replevin against Jackson Farmer and Alonzo Ellis for a span of horses.• The horses had formerly belonged to Farmer, who was an Onondaga Indian, and lived [294] with his tribe on the lands reserved for their use in the county of Onondaga. In the year 1844, Willet Raynor and Henry Raynor recovered judgment against him in a justice's court for a store account, on which execution was issued, and the horses taken and sold. One Coville was the purchaser at the sale, and two or three weeks afterwards he sold them to the plaintiff, from whose possession they were taken by the defendants about a year after the sale. The Indian did not appear to the suit before the justice, but the process was duly served, and there was no question about the validity of the judgment, or the execution and sale, provided the justice had jurisdiction to render judgment against an Onondaga Indian upon contract.

On the first trial at the Onondaga circuit, in September, 1849, a verdict was directed for the defendants, on the ground that the justice's judgment was void. The supreme court, in the fifth district, held otherwise, and granted a new trial. (*See* 2 *Barb. Sup. Court Rep.* 492.) A new trial was had accordingly, and the plaintiff recovered. The defendants then on bill of exceptions moved in the supreme court for a new trial, which was denied, and after judgment they appealed to this court.

*O. Vandenburgh,* for appellants.

*Geo. F. Comstock,* for respondent.

HARRIS, J. The relation between our government and the remnants of the Indian nations within our borders, has been aptly compared to that between a guardian and his ward. The Indian, though born within the territorial limits of our state, is not a citizen. He does not possess the rights, nor is he bound to the duties of a citizen. He is governed by the laws and usages of his tribe, and is only subject to our laws, so far as the public safety requires. Each Indian tribe has been uniformly regarded as an independent sovereignty; and yet, in its weak and dependent condition, as the object of protecting care.

Hastings *v.* Farmer.

Hence, the commendable solicitude which has been manifested throughout our entire history as a state, to protect the race against the fraud and injustice to which they are equally [295] exposed by their own ignorance and weakness, and the superior intelligence and cupidity of their white neighbors.

The legislature of this state very wisely declared, by an act passed in 1790, that no person should maintain any action against any Indians, residing upon any lands reserved to the Oneida, Onondaga and Cayuga Indians, upon any contract made after the first of July in that year. In 1801, this inability to be sued, was extended to the Stockbridge and Brothertown Indians, and in 1807, to the Senecas. In the revision of 1813, these acts, with many others, were combined in the " act relative to the different tribes and nations of Indians within this state." (2 *R. L.* 153, §§ 1, 2.) The obvious intention of the legislature, was to leave the Indian free to make contracts relating to personal property; and when made, if unexecuted, to leave him equally free to perform them or not, as he pleased. The statute allowed the citizen to deal with the Indian, if he would, but closed the door upon him, when he came to enforce his contract by action. The statute is benign and humane in its purpose, and should receive a liberal construction. Such a construction as will not defeat the end which the legislature had in view.

In the case before us, Farmer was an Onondaga Indian. He resided with his tribe, upon lands reserved to them. Under these circumstances, the law declared, in unequivocal terms, that he should not be sued upon a contract, and yet he has been sued. The law declared that no action should be maintained against him, and yet the Raynors have maintained an action against him, and have recovered a judgment, and have enforced its payment. The court below has pronounced these proceedings legal and valid. In this judgment I can not concur. To say that when the legislature declared he should not be sued, it only meant that if sued, he might plead his inability, would be a perversion of the spirit which prompted this enactment. It would be to endow the Indian with that intelligence and

prudence, upon the notorious absence of which the law was founded. It would be but a mockery of the protection, which [296] the legislature, in the execution of the trusts of its guardianship had so carefully provided.

To give validity to the judgment of any tribunal, it must have jurisdiction of the person against whom the judgment is rendered, and the subject matter of adjudication. Jurisdiction of the person is acquired by a suit; by the service of process. It is true, Farmer was served with a summons, but then, such service was prohibited by law, and therefore illegal and void. It was no service, and there being none, it follows that the justice had no jurisdiction.

We have a statute prohibiting the service of process on Sunday. (1 *R. S.* 675, § 69.) Another, declaring that no process shall be served on Saturday, upon persons who observe the seventh day of the week as a holy day. (*Session L.* 1839, *p.* 335.) And still another, declaring that no process shall be served on an elector on the day of any election. (1 *R. S.* 127, § 4.) In these cases, the service being prohibited by statute, would be void. It was never pretended that such service could have the effect of commencing a suit, unless the party appeared and took the objection that the service was illegal. A judgment rendered upon such service would be confessedly *coram non judice*, and void. The learned judge who delivered the opinion of the court below, has referred to these statutes, as " containing provisions somewhat analogous to the one under consideration." In this I agree with him. But I do not assent to his further remark, that these statutes have received a construction in accordance with the view he had taken of the case then before the court. No adjudged case was cited to sustain this remark, nor has any been cited by the counsel who argued in support of the decision. I am persuaded that no such construction has been given to these statutes. The act being forbidden by law, is, if performed, illegal and void. The party performing it in direct violation of the statutes, can not be permitted to derive any advantage from it.

Nor can I see the slightest analogy between this case and

that of an infant defendant. An infant may be sued. There is no law prohibiting a suit against him for any cause of action. But, by the well settled practice at common law, and [297] which practice was adopted in our revised statutes, after the service of process upon an infant, the suit can not be further prosecuted without the appointment of a guardian. The infant is deemed incapable of appointing an attorney to appear for him. It has sometimes happened that the plaintiff, ignorant perhaps, of the fact that the defendant was an infant, has proceeded to judgment without such appointment. In such a case, the court, when the fact was made to appear, recalled their judgment. It was regarded as a mistake—" an innocent mistake," as it is called by Justice Platt, in *Dewitt* v. *Post,* (11 *John.* 460.) When the judgment is revoked, the parties are not thereby out of court. The suit still remains, and the plaintiff upon procuring the appointment of a guardian for the defendant, may proceed with his action. I agree that such a judgment, though revocable, is not void until revoked.

So too, in the case of the outlawry of the plaintiff, or when the plaintiff is an alien enemy, or has been attaint of treason, the fact may be pleaded, either in abatement or in bar, for the reason as stated by Chitty, (1 *Chitty's Pl.* 446, *Springfield ed.* 1840,) that " by either of these, the cause of action is *forfeited.*" In these cases, there is no prohibition to sue. But the condition of the plaintiff furnishes the defendant with matter which he may set up by plea in avoidance of the plaintiff's action. It is called a plea of disability, but in effect, it is a plea which admits the cause of action, and avoids it on the ground that it is forfeited. I confess I am unable to see any analogy between this class of cases and the case at bar.

But it is said, that though the party is prohibited from suing the court is not prohibited from acting; that the judgment is not declared void. This is true. After having prohibited a party from bringing a suit, and declared that he should not maintain an action, it seems to me, it would have been little less than absurd for the legislature to have proceeded to declare that if a party will disregard the prohibition, and can, though

it is forbidden, maintain an action, the judgment shall be void. It would seem like a distrust of its own power to prevent a [298] suit. It is the party, not the court, who institutes the suit. If the party is unable to sue, the court have no power to render a valid judgment.

Again, it is supposed that the latter clause of the section which forbids a suit, has a controlling effect in its interpretation. It declares that " every person who shall sue or prosecute any such action against any of the said Indians, shall be liable to pay treble costs to the party grieved." From the nature of this penalty, the court below infer that the legislature contemplated an appearance by the Indian, when sued, a plea, a trial, and a judgment. With great respect I must be allowed to dissent from this conclusion. But for the penalty prescribed, the party who sued the Indian would have been indictable for a misdemeanor. The suit is expressly prohibited, and when the performance of an act is prohibited by statute, and no penalty is imposed, the doing such act is declared to be a misdemeanor. (2 *R. S.* 696, § 39.) The only effect, therefore, of the latter clause of the section is, to mitigate the punishment which the party bringing the suit would incur, for his violation of law. Even if the clause of the statute which declares that no person shall sue an Indian upon a contract, had been omitted, and the legislature had merely enacted the latter clause, declaring the penalty for bringing such a suit, it would, upon a well settled principle of interpretation, have amounted to a prohibition. It will never be intended that a statute would inflict a penalty for a lawful act. (*Griffith* v. *Wells,* 3 *Denio,* 226, *and cases there cited.*) " A penalty," said Lord Holt, " implies a prohibition, though there are no prohibitory words in the statute." It is no uncommon thing for the legislature, when prohibiting acts, which, though wrong in themselves, involve no great degree of moral turpitude, to prescribe for the offender a milder type of punishment than would follow an indictment for a misdemeanor. Thus, in one of the cases already noticed—the service of process on Sunday—it is declared that the service of the process shall be void, " and shall subject the party offending to damages at

the suit of any party aggrieved." This penalty is certainly very light. It is not easy to conceive of any damages which a [299] party could sustain by being served with process when such service is expressly declared to be void. But it was enough to effect the purpose of the legislature, to declare that the service should be void. The object of the penalty was not so much to punish the offence, as to prevent its being punished as a misdemeanor.

The Indian, when sued, may undoubtedly appear and plead his statutory exemption. In that case, he may perhaps recover his treble costs. That the provision of the statute may be pleaded in bar of the action, was held in *Dana* v. *Dana* (14 *John.* 181.) But if it had been intended that in every case, the Indian when sued, should appear and plead his exemption, or lose the benefit of the provision made in his behalf, I think the legislature would have said so. There are some cases in which this is the only mode in which a party can avail himself of a statutory discharge. Thus, when a party is exonerated from his debts by an insolvent discharge, or by the statute of limitations, though no longer liable upon his contract, there is no law prohibiting any person from suing him. The only way in which he can avail himself of his discharge, is by appearing when sued, and pleading his exemption. But in respect to the Indian, regarding him as *inops consilii*, the legislature have not left him when sued to find out as best he may, how he is to protect himself, but adapting the law to his defenceless condition, have declared what has not been declared in any other case, that "no person shall sue him or maintain any action against him upon his contracts." The exigency of the case demanded this extraordinary protection. And even this has not always been sufficient to secure him against the wrongs and injustice to which he was alike exposed by his own peculiar weaknesses and the superior craft and address of the whites around him. Being notoriously unfit to make a contract, it was the policy of the legislature to discourage the white man from making an executory contract with him, by a statute so comprehensive as to take from him all the means of enforcing performance. This policy

dictated the act under consideration. The legislature having enacted that no person shall sue an Indian upon a contract, an [300] Indian can not be sued upon a contract. Farmer being such an Indian as the statute describes, was not legally sued. The judgment rendered against him was therefore void.

It follows that the judgment of the court below in the present case should be reversed, and a new trial granted.

JEWETT, J. dissented, and delivered an opinion in favor of affirming the judgment.

Judgment reversed.