CYRUS CROUSE, Respondent, *v.* THE NEW YORK, PENNSYLVANIA AND OHIO RAILROAD COMPANY, Appellant.

*Judgment against a Seneca Indian for costs, in an action of trespass brought by him — an execution can be issued against his property—chapter 150 of 1845 is not applicable to such an action.*

Upon an appeal from an order setting aside an execution against property, issued upon a judgment against the plaintiff for costs in favor of the defendant, a railroad company, it appeared that the plaintiff was a Seneca Indian, living and residing with his tribe in this State on the Allegany reservation, and that the action was in trespass to recover damages for the killing of the plaintiff's horse, on the line of the defendant's road, in consequence of the omission of the defendant to construct and maintain fences and cattle guards as required by the statutes. The attorney, appointed by the State for the Seneca Nation of Indians, prosecuted the action in behalf of the plaintiff, and was directed to do so by a resolution of the council, which is the governing body for the Seneca Nation. Upon the trial of the action the plaintiff was nonsuited.

*Held,* that the provision contained in chapter 150 of the Laws of 1845, which prohibits the issue of an execution to collect a judgment against a Seneca Indian, rendered for costs only, and provides for the payment of such judgment by the State treasurer out of the annuity in his hands belonging to the Seneca Nation, did not apply to this action and prevent the collection of a judgment recovered against an individual Indian out of his individual property, and that the order should be reversed. (HAIGHT, J., dissenting.)

APPEAL from an order of the Cattaraugus County Court entered on Oct 21, 1887, setting aside an execution against property issued upon a judgment rendered in that court in the defendant's favor for the costs of an action which was originally commenced in a Justice's Court. The amount of costs was $103.10.

*James G. Johnson,* for the appellant.

*Hudson Ansley,* for the respondent.

BARKER, P. J. :

The plaintiff in this action is a Seneca Indian, living and residing with his tribe in this State on the Allegany reservation.

The alleged cause of action against the defendant was trespass for killing the plaintiff's horse, on the line of its road, in consequence

of the omission of the defendant to construct and maintain fences and cattle guards as required by the statute. Although it is not distinctly stated in the case that the accident occurred on the section of the defendant's road that crosses the Indian reservation, it will be assumed that such is the fact, as being most favorable to the plaintiff's contention. The plaintiff failed to maintain his case and was nonsuited in the court below, and judgment for costs was entered against him, the execution was in the customary form against property. The attorney appointed by the State for the Seneca Nation of Indians, prosecuted the action in behalf of the plaintiff and was directed to do so by a resolution of the council, which is the governing body for the Seneca Nation of Indians. The court below set aside the execution on the sole ground that the provisions of chapter 150 of the Laws of 1845, prohibits the issue of an execution to collect a judgment against a Seneca Indian rendered for costs only, and provides for the payment of such judgment by the State treasurer out of the annuity in his hands belonging to the Seneca Nation. The respondent takes no other ground in support of the order. We have reached the conclusion that the learned county judge was in error, and that the prohibitory clause of the statute does not apply to a case like the one before us, to the extent that a judgment against an individual Indian cannot be collected out of property of which he may be the individual owner. The question presented is of much importance to the Seneca Nation of Indians as well as to the individual members of that tribe, and to the citizens and State in general.

The provisions of the first section of the act relate entirely to the preservation of the several reservations on which the Seneca Indians reside, and to the protection of the rights and interests which they have and enjoy in common under the laws of the State and by their customs and regulations. The next section provides for the appointment, by the State, of an attorney, whose power and duties are set forth therein, with particularity, followed by other provisions relative to the question presented on this appeal. The provisions of the statute which require interpretation are as follows : " He (the attorney) shall, from time to time, advise the said Indians respecting controversies between themselves, and between them, or

any of them, and any other person; he shall prosecute and maintain all such actions, suits and proceedings for them, or any of them, as he may find necessary and proper ; and it shall be his duty, on the written complaint of a majority of the chiefs of the reservation on which a trespass is alleged to have been committed, of any trespass having been committed on the lands in the said reservations, or of any timber, wood or logs having been cut or carried away, or converted by any person to his own use, immediately to commence the proper suits for the recovery of such property, or of damages for any such injury.    He shall also defend all actions brought against the Indians, or any of them, by white persons, and shall, at all times, when requested by them, or any chief, advise them in relation to their affairs.    In case it shall be necessary to execute any bond for the prosecution or maintenance of any suit or proceeding in behalf of the said Indians, or any of them, or for the defense of any suit or proceeding against them, the said attorney may execute the same in the name and behalf of the said Seneca Nation, who shall be bound thereby in the same manner as any citizen may be bound by his lawful agent and attorney in fact; and in case any costs shall be recovered in any action instituted by the said attorney, or defended by him, against the said Seneca Nation, no execution shall be issued for the collection of the same, but the same shall be paid by the treasurer on the warrant of the comptroller, out of any annuity or interest money payable by this State to the Seneca Indians, upon producing to the comptroller a certificate of the said attorney of such recovery, and a duly certified transcript of the judgment of or of the docket thereof awarding such costs.    All sums recovered in any action brought by the said attorney, after deducting such costs and expenses as shall be certified by the circuit judge or the vice-chancellor of the eighth circuit, to be reasonable and proper, shall be paid over to the treasurer of the Seneca Nation of Indians, if there be one, and if there be none, then to such person as shall be appointed to receive the same by a majority of the chiefs of the said Indians in full council assembled, such appointment to be certified by the United States agent for the said Indians, if there be one.    And the said sums so paid over shall be applied to the benefit of the said Indians, as shall be directed by a majority of their chiefs in full council assembled, except that no part of any sum

recovered in any such suit shall be paid to or in any way applied for the benefit of any Indian who shall have been examined as a witness in such suit, on behalf of the Seneca Nation. And in every suit or proceeding authorized by this act, any individual Indian of the said Seneca Nation may, if otherwise competent, be received and examined as a witness on behalf of the Seneca Nation, notwithstanding his being a member of the said Seneca Nation."

In seeking the object and purpose of the legislature in passing this statute, it is important to have in mind the status of individual Indians in this State before and at the time of its adoption. Indians residing with the tribes of which they are members on the reservation occupied by them are not citizens, but are treated by our laws as residents and inhabitants of the State, amenable to the laws of the land and to the jurisdiction of the courts, both civil and criminal, unless exempted from their operation by some legislative enactment. In extending our system of laws over these people for their own protection, as well as for the protection of the people and citizens generally, no attempt has even been made to interfere with their social or domestic relations, nor to regulate the manner of acquiring, holding or conveying property among themselves. But in their intercourse and dealings with other people, they, as individuals, are subject to the civil and criminal laws of the State, unless some statute has exempted them from their operation, of which there are several, the spirit and purpose of which are intended to protect them from the dangers arising from their own improvidence and incapacity. The right of an Indian to become a trader and carry on business, to make contracts and acquire and enjoy property, has never been denied him by the laws of this State. On the contrary, the policy of the State has been more humane and the laws have been enacted with a view of improving and strengthening his general character, with a view of increasing his ability for self-support, and inducing him to live a better and more civilized life. Courts of justice are also open to him, and he may become a suitor in a civil action and demand redress from all persons who have violated any of his rights of person or of his property. The history of legislative relief to the Indian tribes residing in this State on reservations allotted to them, as well as to the rights and privileges of individual Indians, is in complete harmony with these

views, so are the decisions of the court in adjudicating questions involving the status of Indians residing in the State.

In 1813 (chap. 92; 2 R. L., 153) an act was passed for the protection of such individual Indians as should have business transactions with white men, and they were exempt from all liabilities on their executory agreements thereafter made. The court, in *Hastings* v. *Farmer* (4 N. Y., 293), in commenting on the meaning and effect of this statute, said: " The obvious intention of the legislature was to leave the Indian free to make contracts relating to personal property; and when made, if unexecuted, to leave him free to perform them or not, as he pleased. The statute allowed the citizen to deal with the Indian, if he would, but closed the door upon him when he came to enforce his contract by action." As between themselves the Indians may deal and traffic; make contracts binding on each other, which may be enforced in their own tribunals by their own customs and laws, and when such agreements are of a certain magnitude and importance, they may be sued upon and enforced in the State courts in conformity to our general laws. The right of one Indian to sue another, upon an executory contract between them, made on one of the reservations, is limited in its operation to the Seneca Indians. In section 14, chapter 365, of the Laws of 1847; it is provided, " for any demand or right of action which any Indian of the said nation may have against any other Indian, and which, according to the provisions of this act, exceeds the amount which may be awarded by the peace-makers, actions may be maintained and prosecuted in the courts of this State in the same manner and with the like effect as between white citizens." There is another act which has a more significant bearing on the question which we are considering, and is found in chapter 87 of the Laws of 1843, section 4, which provides, " Any native Indian may, after the passage of this act, purchase, take, hold and convey lands and real estate in this State, in the same manner as a citizen; and whenever he shall have become a freeholder, to the value of one hundred dollars, he shall be liable on contracts and subject to taxation and to the civil jurisdiction of the courts of law and equity of this State, in the same manner and to the same extent as a citizen thereof." Many other statutory laws relative to the Indians might be cited in confirmation of the views we have expressed, that

an Indian may make contracts with citizens of the State, and carry on business, and, for the protection of the rights of his property, resort to the courts for relief and redress.

It has not been argued by the learned counsel for the plaintiff that the judgment for costs was erroneously entered against the plaintiff, but his contention is, that the judgment cannot be enforced by execution against his property, and he relies on the provisions of the statute from which we have quoted in support of his position. As to the Indian, who is the plaintiff in this action, is capable of owning real and personal property wholly distinct and independent from the control and management of the Seneca Nation, we think it may be subject to the lien of this judgment and be reached and sold by the execution which was set aside by the order of the court below. He has sought the protection and benefit of the general laws of the State, applicable in this respect to all residents and citizens of the State, and having failed to make a case, entitling him to relief, he must bear the consequences of such defeat. If this is not the law, then a person bearing the relation which the plaintiff does to the community, would become a troublesome and offensive character capable of perverting the process of the law to the damage and annoyance of good and law abiding citizens. The two first sections of the act of 1845, in their entire scope and meaning, relate to the direction, control and management of the several reservations belonging to the Seneca Nation of Indians, and the other property which they may have and hold in common. The letter of the statute limits the probihition against issuing executions on judgments for the purpose of collecting the same to cases where costs have been awarded against the Seneca Nation, as a party in an action. The language of this provision does not embrace actions prosecuted by an individual Indian in his own right. The language of section 2 is: " In case any costs shall be recovered in any action instituted by the said attorney or defended by him against the said Seneca Nation, no execution shall be issued for the collection of the same, but the same shall be paid by the treasurer," etc. We are unable to discover anywhere in the act the purpose of the legislature to charge upon the treasurer of the Seneca Nation the expenses of a litigation instituted by one of the members of the tribe. The annuities out of which the costs are to be paid belong to the nation in its tribal

capacity, and all the members, men, women and children share in its distribution, and it is paid by the State to them as a compensation for lands and privileges which they held in common.    The probihi-tion does not delay in such cases but rather facilitates the successful suitor in securing the payment of the judgment.    Another section indicates that the provisions of the act under consideration are limited to actions prosecuted by and against the nation, and by and against individual Indians relative to property and interests which they have in common, for it is declared that the damages which may be recovered shall be paid into the treasury, and be made subject to the order of the council.

In disposing of this appeal we intend only to pass upon the pre-cise question presented and hold that the execution was properly issued against the property of the plaintiff, and if the sheriff can find property which is subject to levy and sale on execution belong-ing to the plaintiff, he may seize and sell it, the same as if it was issued upon a judgment rendered against a citizen, but we do not intimate the kind or value of property which is not subject to levy and sale on an execution issued on a judgment against an Indian.

The order appealed from should be reversed, without costs of this appeal to either party.

BRADLEY and DWIGHT, JJ., concurred.


HAIGHT, J. (dissenting):

This action was brought by the attorney of the Seneca Nation of Indians.    The statute in question provides that he *shall* prosecute and maintain all actions, suits and proceedings for the Indians, or any of them, as he may find necessary and proper.    This statute confides to the attorney the exclusive right to prosecute and main-tain all actions brought by the Indians, or any of them, and they cannot be brought by another attorney, even with the sanction of the attorney of the nation.    All such actions must be brought by and in the name of the attorney appointed by the governor, to whom he may be held accountable for his conduct.    (*Jackson ex dem. Van Dyke* v. *Reynolds*, 14 Johns., 335.)    The individual Indian has no control over the attorney.    He is authorized to prosecute such action as " he may find necessary and proper."

He may bring action without the consent or even the knowledge of the Indians, and to permit, under such circumstances, an execution to issue, in case of defeat against either the property or body of the Indian, would, to my mind, be unjust and within the express prohibition of the statute.

Order reversed, without costs of this appeal to either party.